J-S63005-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| TRENTON KNIGHT | |
| Appellant | No. 1428 WDA 2016 |

Appeal from the Judgment of Sentence July 19, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009767-2015

BEFORE: BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: FILED DECEMBER 27, 2017

Trenton Knight appeals from the judgment of sentence of ten to twenty years incarceration imposed following a non-jury trial wherein he was found guilty of voluntary manslaughter and persons not to possess a firearm, and acquitted of tampering with physical evidence. We vacate Appellant's conviction for voluntary manslaughter, reverse his judgment of sentence, and remand for resentencing.

On May 15, 2015, Crystal McIver and her long-term boyfriend, the victim Darius Williams, became embroiled in a domestic dispute. As a result of the ongoing quarrel, Ms. McIver dropped off Mr. Williams at his father's house, where, typically, he would spend a few days cooling off before returning to their shared home in Jefferson Hills, Allegheny County. Ms.

McIver proceeded to her place of employment where she was scheduled to work until 11:30 p.m. At some point during the evening, Ms. McIver contacted Appellant. She had known Appellant for some time, but had only recently started communicating with him on a regular basis. Appellant and Ms. McIver agreed to meet for a romantic tryst.

In the early morning hours on May 16, 2015, Appellant met Ms. McIver at a Sheetz gas station in Monroeville and they returned to Ms. McIver's residence in Jefferson Hills. After spending a short time talking in the living room, Appellant and Ms. McIver proceeded to Ms. McIver's bedroom where they watched TV, engaged in sexual intercourse, and fell asleep. At approximately 3:30 a.m., Ms. McIver awoke to the sound of Mr. Williams pounding on the front door. In a panic, she roused Appellant, who, upon hearing the commotion, began frantically searching for his clothes. He was only able to locate his boxer briefs.[1] After hearing Mr. Williams enter the house through the garage, Ms. McIver implored Appellant to hide in her son's bedroom, which was indirectly across the hallway from her bedroom.[2] He complied, and Ms. McIver locked the room's door as she exited.

_____

[1] Appellant's red jacket was later recovered from Ms. McIver's son's bedroom.

[2] Ms. McIver has two children, neither of whom was home during the event in question.

As Mr. Williams entered the residence, he tripped the security alarm. He then walked from the garage to the living room and entered the code to deactivate it. At that point, Mr. Williams approached Ms. McIver, who was standing in the hallway near the closed door to her son's bedroom. She then indicated that she had someone in the house. Mr. Williams approached the closed bedroom door, removed a folding knife from his pocket, and used the knife to unlock the bedroom door. While still holding the knife, Mr. Williams turned on the overhead light inside the room.

Mr. Williams then entered the bedroom. Ms. McIver overheard Mr. Williams use an expletive. Appellant asked him to calm down, after which three gunshots rang out from the bedroom. Mr. Williams left the bedroom, stumbled into the living room, and collapsed on the living room floor. Shortly thereafter, Mr. Williams died from massive blood loss caused by three bullet wounds, one in his upper right chest, one to his left armpit, and one in his right upper back. Appellant fled the scene of the crime wearing only his boxer shorts, and was later apprehended by police on May 28, 2015. The firearm was not recovered, but Appellant's pants and shirt, which contained numerous forms of identification, were discovered in Ms. McIver's bedroom closet.

Following a non-jury trial, the trial court found Appellant guilty of one count of voluntary manslaughter and one count of persons not to possess a firearm. Appellant was found not guilty of tampering with evidence. On July

19, 2016, the court sentenced Appellant to ten to twenty years incarceration for voluntary manslaughter, and a concurrent sentence of five to ten years imprisonment for one count of persons not to possess a firearm. Appellant filed a post-sentence motion, challenging, inter alia, the sufficiency and the weight of the evidence underlying his convictions, which was denied without a hearing on August 29, 2016. He filed a timely notice of appeal to this Court. Appellant and the trial court complied with the dictates of Pa.R.A.P. 1925, and this matter is now ready for our review.

Appellant presents two questions for our review:

I.  Did the Commonwealth fail to rebut [Appellant's] self-defense claim such that the evidence presented at trial was insufficient as a matter of law to sustain a conviction for voluntary manslaughter where [Appellant] did not provoke an act of violence, did not have an avenue of retreat, and did not use excessive force?

II. Was the Trial Court's verdict of guilty as to the count of voluntary manslaughter against the weight of the evidence where the Trial Court relied upon facts not presented in evidence, ignored undisputed evidence, and misapplied the law of self-defense?

Appellant's brief at 5.

Appellant first challenges the sufficiency of the evidence supporting his conviction for voluntary manslaughter. We review a challenge to the sufficiency of the evidence under the following guidelines:

Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may

- 4 -

not weight the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Fitzpatrick, 159 A.3d 562, 567 (Pa.Super. 2017) (citation omitted).

The Crimes Code defines voluntary manslaughter, in relevant part, as:

(a) General Rule.--A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed; or

(2) Another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

18 Pa.C.S. § 2502(a).

Where the defendant raises a claim of self-defense, "the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." Commonwealth v. Smith, 97 A.3d 782, 787 (Pa.Super. 2014) (citation omitted). The justified use of deadly

force requires that: "a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid danger." Id. (citing Commonwealth v. Harris, 665 A.2d 1172, 1174 (Pa. 1995)).

At trial, Appellant raised a claim of self-defense and testified on his own behalf. He stated that when Mr. Williams entered the bedroom where Appellant was hiding and turned on the light, he saw a knife in his hand. N.T. Trial, 4/18-21/16, at 278. After a short verbal exchange, Appellant claimed that Mr. Williams raised the knife over his head and rushed at him. Id. at 279. Appellant, backed into a corner, claimed that he shot Mr. Williams one time. Id. at 280. Upon impact, Mr. Williams purportedly paused, and then resumed rushing towards Appellant. Id. at 281. Appellant then fired two additional shots, and Mr. Williams walked out of the room. Id. at 282. Finally, Appellant stated he waited a short time before fleeing the house, and that he discarded the firearm. Id. at 283.

The trial court found Appellant's account of the encounter largely incredible. It noted that it was undisputed that Appellant fired the shots that killed Mr. Williams. Of particular import, the court specifically found that Appellant was acting under a "sudden and intense passion resulting from

serious provocation by [the victim]." Trial Court Opinion, 1/31/17, at 6. However, the court also found that Mr. Williams was backing out of the room when he was shot, and "[s]ignificantly, [Mr.] Williams, was shot once in the chest and twice in the back." Id. at 7. As such, the trial court determined that Appellant "was not confronted with deadly force, but used deadly force nonetheless." Id. It concluded that the Commonwealth established that Appellant used excessive force when he shot the victim, and thus, his self-defense claim was not justified.

Appellant's argument is multi-faceted. First, he contends that the Commonwealth failed to establish that he provoked a confrontation with Mr. Williams. He maintains that there was no evidence of a hostile relationship between himself and the victim, and that, rather than confront Mr. Williams, he in fact attempted to hide from him. Second, Appellant claims that the evidence adduced at trial indicates that he did not violate a duty to retreat since the victim was blocking the only exit from the bedroom at the time of the shooting. Third, Appellant asserts that his use of deadly force was justified, since he reasonably believed that he was in danger of losing his life or suffering serious bodily injury, especially in light of the fact that he and Ms. McIver were panicked by the victim's appearance at the house and his possession of the knife. Further, he alleges that the trial court's finding that Mr. Williams was backing out of the room at the time of the shooting was not supported by the record. Finally, Appellant assails the trial court's

conclusion that he was not confronted by deadly force, asserting that he had no obligation to wait until he was attacked by the victim, and that the victim entered the room carrying a knife.

At the outset, we note that the trial court based its decision solely on Appellant's alleged unjustified use of deadly force, that is, that Appellant utilized an excessive level of force. As such, the Commonwealth bore the burden of proving beyond a reasonable doubt that Appellant used force in excess of that required to save himself from an imminent threat to undermine his claim of self-defense. Smith, supra. We find that the record does not support the trial court's legal determination that Appellant used force in excess of that necessary to save himself from harm.

Instantly, Ms. McIver testified that, shortly after Mr. Williams, armed with a knife, entered the bedroom where Appellant was hiding, Mr. Williams exclaimed, "oh, shit." N.T. Trial, 4/18-21/16, at 95, 99. Appellant then responded, "chill," after which three shots rang out. Id. at 99-100. Mr. Williams then stumbled into the living room, and Appellant exited the bedroom holding a firearm. Id. at 102. Ms. McIver testified that, after she heard the three gunshots, the victim backed out of the bedroom. Id. at 101 (emphasis added).

The Commonwealth also offered the expert testimony of Dr. Baiyang Xu of the Allegheny County Medical Examiner's Office, who testified that Appellant suffered from three lethal gunshot wounds: one which entered the

victim's right chest, one which entered his left armpit, and one which entered his right upper back. Id. at 205, 211, 213-214.

Based on the foregoing, we find that the record does not support the trial court's findings that Mr. Williams was backing out of the bedroom at the time he was shot, or that Mr. Williams was shot twice in the back. On the contrary, the Commonwealth's evidence corroborated that the deadly encounter occurred entirely within the confines of the small bedroom, that Mr. Williams left the bedroom after he was shot, and that he was shot once in the chest, once in the side, and once in the back.

Furthermore, the record indicates the following. At the time of the deadly encounter, Appellant was locked in a small bedroom with one exit. The trial court found that Appellant and Ms. McIver were panicked due to Mr. Williams' unexpected return home. Mr. Williams entered the bedroom wielding a knife and blocked the only means of egress.[3] We have long held that brandishing a knife amounts to the use of deadly force. See Commonwealth v. Mayfield, 585 A.3d 1069, 1077 (Pa.Super. 1991) (citing Commonwealth v. Jones, 332 A.2d 464 (Pa.Super. 1974)). As such, contrary to the trial court's finding that Appellant did not face deadly

_____

[3] Dr. Xu testified that, at the time of his death, Mr. Williams' blood contained a high level of cocaine, 327 nanograms per millimeter, and just below the legal level for alcohol, measured at 0.074% in his urine and 0.071% in his eye fluid. N.T., 4/18-21/16, at 219-221. He stated that these levels would generally cause impairment in a person. Id. at 220.

force, the victim's armed presence in the room clearly represented a threat of death or serious bodily injury.

Indeed, that Appellant reasonably believed that he was in danger of death or serious bodily injury is confirmed by the trial court's determination that Appellant acted under a "sudden and intense passion resulting from serious provocation by [the victim]." Trial Court Opinion, 1/31/17, at 6 (emphasis added). The trial court failed to recognize that its finding of "serious provocation," i.e., that Mr. Williams' advanced upon Appellant while wielding a knife in the confines of the enclosed bedroom with no means of escape, entitled Appellant to respond with deadly force. Therefore, the record supports Appellant's contention that he was justified in using deadly force. Harris, supra; 18 Pa.C.S. § 505(b)(2).

In any case, the trial court did not expressly find that Appellant's use of deadly force was not justified on these grounds, but rather, it determined that Appellant employed excessive force. This determination was largely based on its findings that Mr. Williams was backing out of the room when he was shot, and that he was fatally shot twice in the back. However, as noted above, the record does not support these findings. The Commonwealth proffered no insight into what actually occurred in that small bedroom. Since the trial court found that the victim wielded a knife upon entering the

small room wherein Appellant was hiding, which constitutes a showing of deadly force, Appellant was entitled to respond in kind.[4] In light of the facts and circumstances involved herein, we find that, even viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth has not proven beyond a reasonable doubt that Appellant did not act in justifiable self-defense. Smith, supra. Since we find this issue dispositive, we need not reach Appellant's second claim.

_____

[4] Although it was not raised by the Commonwealth, we observe that our analysis is not altered by Appellant's conviction for persons not to possess a firearm. In Commonwealth v. Williams, 1692 MDA 2016 (Pa.Super. 2017, filed December 8, 2017), a panel of this Court recently analyzed the effect of a conviction for persons not to possess on a claim of self-defense following a fatal shooting in a parking lot in Williamsport, Lycoming County. In that case, the defendant conceded that he had a duty to retreat, but sought to overcome that duty by relying on the statutory right to stand his ground. Id. at *12-17.

The right to stand one's ground obviates the duty to retreat when an actor, who is not engaged in a criminal activity, and who is in legal possession of a firearm, is attacked in a place where he would normally have a duty to retreat, if certain additional criteria are met. See 18 Pa.C.S. § 505(b)(2.3). In Williams, we affirmed the trial court's determination that the appellant was not entitled to stand his ground since he illegally possessed a firearm. Williams, supra at *15.

Williams is inapposite to the instant matter since the trial court premised its opinion on Appellant's purported use of excessive force, and it is uncontested that Appellant had no means to safely retreat from the bedroom wherein he was hiding. Thus, Appellant had no need to rely on the statutory right to stand his ground since he had no duty to retreat at the time of the incident. Hence, Appellant's illegal possession of a firearm was not pertinent, and this limitation was inapplicable. See 18 Pa.C.S. § 505(b)(2)(ii).

Appellant's conviction for voluntary manslaughter is vacated. Judgment of sentence reversed. Case remanded for resentencing on the remaining conviction. Jurisdiction relinquished.

Judge Solano joins the memorandum.

President Judge Emeritus Ford Elliott notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/27/2017